The part of that act applicable here is now found in Gen. Code 8121, and provides that "the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or endorsing, as the case may be. In such case, the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument."

The answer tendered in this case came within the provisions of said section, and the evidence offered by defendant below, tending to establish the allegations of his answer, should have been received and submitted to the jury, under a proper charge.

See *Starr Piano Co.* v. *Edgar*, 31 O. C. C. 295 (12 N. S. 37).

For error in excluding evidence under the answer and directing a verdict for the defendant, the judgment is reversed.

**Grant** and **Meals, JJ.,** concur.

---

## DIVORCE AND ALIMONY.

[Wayne (5th) Court of Appeals, February Term, 1913.]

Voorhees, Shields and Marriott, JJ.

Amos Knestrick v. Lide Knestrick.

**Reasonable Alimony Considering Financial Ability of Husband and Pecuniary Needs of Wife, Insane when Divorced, Allowed.**

A decree of divorce granted a husband upon the ground of impotency of his wife, after they had lived together in cordial and affectionate relation for sixteen years and after she had become insane, cannot be said to be based upon the wife's aggression or fault, and does not absolve him from liability to support her; hence, reasonable alimony should be allowed,

based upon the husband's financial condition and ability to support her, and her pecuniary needs, such as will save her from becoming a charge on the charity of her friends, relatives or the state.

APPEAL from common pleas court.

*Wieser & Ross,* for plaintiff.
*Frank Taggart,* for defendant.

**SHIELDS, J.**

This was an action in the court of common pleas of this county brought by the plaintiff against the defendant for divorce. The defendant, an insane person, through her guardian, filed an answer and cross petition claiming alimony. A divorce was granted by said court to the plaintiff and the action was appealed to this court upon the allowance of alimony, and the same was heard upon evidence.

It appears that these parties were married in October 1879 and lived together as husband and wife until July 1895, when the defendant became insane and was so adjudged by the probate court of this county. That no children were born of such marriage. That in July 1906, Dr. A. L. Hoisington, a brother of the defendant, was appointed guardian of her person and estate. That in September 1909 the defendant left the home of the plaintiff in Wooster, Ohio, and went to the home of said guardian in Fremont, Ohio, where she remained, and the plaintiff continued to reside in Wooster. That after the defendant was adjudged insane, she was committed to the Massillon State Hospital from which she was released, upon the application of the plaintiff, who afterward placed her in a private hospital, and failing to show improvement in her mental condition, she was again committed to the Massillon State Hospital where she remained some time, and later on returned to live with her husband where she remained until she went to Fremont, as stated. That the plaintiff is now and for several years past has been a practicing physician in Wooster. That in 1906 he made an assignment for the benefit of his creditors, and shortly afterward paid his creditors in full. That at that time,

Knestrick v. Knestrick.

under said assignment, the defendant's contingent right of dower in the plaintiff's property was fixed at $628.45, which was paid to her guardian. That the defendant then owned and now owns the one undivided half interest in seventy acres of land in Wayne county, Ohio, valued by different witnesses at figures ranging from $50 to $85 per acre, from which real estate she receives an annual income of $100, which said sum before 1906 was paid to her husband, and after that time to her guardian. That the plaintiff's income from said practice averages at least $10 per day, less expenses, and that he possesses property valued at about $3800.

In his petition filed for a divorce the plaintiff says that prior to the time the defendant became insane "she was impotent and guilty of gross neglect of duty toward this plaintiff in that she refused to copulate and cohabit with him and neglected other duties." The guardian of the wife by answer denies the material allegations in said petition, and in a cross petition charges the plaintiff with gross neglect of duty in failing to provide his wife with the necessities of life and that she has been so supplied by the charity and kindness of her friends, and that her separation from the plaintiff was caused by the plaintiff's ill treatment of her, to which said cross petition the plaintiff filed a reply in the nature of a general denial.

The appeal here is upon the allowance of alimony made by the court below. The rule laid down in the case of *Cox* v. *Cox*, 19 Ohio St. 502 [2 Am. Rep. 415], has invariably been recognized and adhered to by this court in cases of this kind in reopening for trial all the issues of fact upon which the rights of the parties in respect to alimony depend. Ordinarily the husband is not called upon to support his wife when she abandons him and his home and voluntarily goes elsewhere to live, especially if the home so offered her is a reasonable one under the circumstances. This leads us to inquire of the circumstances under which the defendant is alleged to have left the plaintiff's home. The evidence upon the part of the plaintiff tends to show that he was provided with a comfortable home, reasonably well furnished, that he cared for and supplied the defendant with clothing and other necessaries of life, and that the relations between the par-

ties, at least, up until July 1895, were most cordial and even affectionate. The plaintiff himself testified that up to said date "she was helpful about the house and was a wife to me." He further testified that after said date he continued to treat and provide for her properly, and so continued until about the —— day of September, 1909, when Mrs. Hoisington, the wife of the defendant's said guardian, while visiting at the plaintiff's home, and while he was absent and without his knowledge, persuaded the defendant to pack her clothing and personal effects and store the most of them with a neighbor, and go to her home in Fremont with her, and where, as before stated, she has remained. Having left the home under these circumstances, the plaintiff testified that since said time he has made no effort to have his wife return to him, that he has not visited her, that he has not seen her, that he has not written to her nor to said guardian or other person in Fremont about her, nor has he contributed or offered to contribute anything to her support, except the sum of $50 allowed by this court at its former term as alimony pending the suit. Opposed to this is the testimony of Mrs. Hoisington who testified that the defendant frequently visited her and her husband in their home in Fremont prior to September, 1909, that she remained there with them weeks and even months at a time, and that the plaintiff at least during some of such visits also visited them while the defendant was visiting them. She further testified that prior to the ——— day of September, 1909, when the defendant left her home in Wooster, she had arranged with the plaintiff that she (the witness) was to visit at the plaintiff's home and that the defendant was to return to her home in Fremont with her, and that in pursuance of such arrangement she visited the plaintiff at his home and the defendant returned to Fremont with her. That the plaintiff had full knowledge of the defendant leaving his home, and assented thereto, and that he was at his home when she so left. She further testified that she found the defendant lodging, alone, in one of the back rooms in the plaintiff's house, upstairs, that she had no shoes and was otherwise wanting in wearing apparel. Upon calling the attention of the plaintiff to this condition, the witness testified that the plaintiff answered

Knestrick v. Knestrick.

"that if any purchases were to be made for her they would have to be made out of moneys coming from her own property." That on other occasions when visiting at the plaintiff's house she testified she observed the defendant's necessitous condition and that she (the witness) had supplied her with clothing. Said witness also testified that the defendant is a great charge to her family, requiring her meals to be carried to her in her room and requiring also other special and personal services which one in her frail and mental condition craves. The guardian also testified that when he last visited the plaintiff, the defendant was occupying a back room alone, upstairs, in the plaintiff's house, and when she last came to his house the defendant was poorly clothed. He also testified to the nature and extent of services necessary to her proper care, that she is in poor health and that her condition frequently requires medical attention, adding that "if she was well mentally, she could not maintain herself." The plaintiff denied that the defendant was not properly cared for in his house, and he also denied that he did not furnish her all needful clothing, and he says the defendant refused to wear some of the clothing he did furnish because of her refusal to see people who called at his house and because of her aversion to dress.

It will thus be seen that the evidence is conflicting as to the circumstances under which the defendant left the plaintiff's home, but it may well be said that whatever the circumstances, they are immaterial in the face of the admitted fact that the defendant was then an insane woman. With her reason lost, she was no longer a responsible agent. In her conduct, she was not accountable to the civil law or to the laws of society. True, the decree of divorce seems to have been granted on the ground of her impotency—a strange charge to be made by the plaintiff after these parties had been married and presumably cohabited together for some sixteen years, and after she had been adjudged insane—an issue with which this court has nothing to do, but the fact that a divorce was granted does not absolve the husband from liability to support his wife. The cause, if there was a cause, was not of the wife's aggression or sinning, for her reason was dethroned by a power over which she had no control. The charity of the law does not refuse its benefits to one so afflicted,

much less punish the victim. The sacredness of the family relation supplemented with the husband's obligation, under the circumstances here shown, unite in emphasizing this defendant's claim to consideration upon the court, and while the plaintiff's financial condition is not to be ignored but considered on the one hand, the helpless and stricken condition of the defendant is not to be lost sight of on the other. The plaintiff is fifty-nine years of age, apparently in good health, possessed of a practice in medicine yielding him an average income of $10 per day, less expenses, has about $3800 worth of property and has at least a fair earning capacity in his profession. The defendant is fifty-four years of age and is possessed in her own right of her inchoate right of dower and her interest in certain real estate as hereinbefore stated. Such reasonable allowance of alimony should be made the defendant in view of the financial condition of the husband as will save her from becoming a charge on the charity of friends, or relatives, or the state. This view we think is sanctioned both by good morals and by the practice of our courts. Upon the subject of granting alimony the distinguished judge announcing the opinion in *Fickle* v. *Granger*, 83 Ohio St. 106, says:

"Alimony is an allowance for support, which is made upon considerations of equity and public policy. It is not property of the wife recoverable as debt, damages or penalty. It is based upon the obligation, growing out of the marriage relation, that the husband must support his wife, an obligation which continues even after a legal separation without her fault."

Considering that the plaintiff has not paid anything toward the support of the defendant since September, 1909, except the alimony allowed her *pendente lite*, hereinbefore referred to, we are of the opinion that the defendant should have and it is hereby decreed that she have as alimony to this date the sum of $500 payable as follows, to wit: $250 on or before March 1, 1913, and $250 on or before April 1, 1913, and the further sum of $400 per year hereafter, commencing April 1, 1913, payable quarterly, that is to say, $100 every three months from April 1, 1913, such payments to continue until the further order of this court.

Knestrick v. Knestrick.

It is further ordered that the plaintiff pay the costs of this proceeding.   Exceptions noted.

**Voorhees** and **Marriott, JJ.,** concur.